UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| JAMES HALL, Individually and as Personal ) <br> Representative of the Estate of Danita Hall, ) <br> Deceased, and DEBBIE TERRY, ) <br> Individually and as Personal Representative ) <br> of the Estate of David Terry, ) <br>        Plaintiffs, ) <br> ) <br>   vs. ) <br> ) <br> TRAVELERS PROPERTY CASUALTY ) <br> COMPANY OF AMERICA, a member of ) <br> THE TRAVELERS COMPANIES, INC., ) <br> and ILLINOIS NATIONAL INSURANCE ) <br> COMPANY, a member of the AIG ) <br> AMERICAN INTERNATIONAL ) <br> COMPANIES, ) <br>        Defendants. ) | 3:08-cv-0007-RLY-WGH <br> (Consolidated with <br> 3:08-cv-0008-RLY-WGH) |

**ENTRY ON DEFENDANT ILLINOIS NATIONAL INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

This case arises from an accident that claimed the lives of Danita Hall ("Hall") and

David Terry ("Terry"), who were struck by a Dodge Dakota pickup truck while working

as flaggers on a Gohmann Asphalt and Construction, Inc. ("Gohmann") road crew. On

January 9, 2009, the Personal Representatives of the Estates of Hall and Terry, James

Hall and Debbie Terry respectively ("Plaintiffs"), filed separate lawsuits in this court,

seeking underinsured motorist coverage from Gohmann's commercial insurance policy

issued by Travelers Property Casualty Company of America ("Travelers") (Count I) and

1

from Gohmann's commercial umbrella policy issued by Illinois National Insurance Company ("Illinois National") (Count II).  On March 18, 2008, the two cases were consolidated, and on September 8, 2008, the Plaintiffs settled with Travelers for the "policy limits minus the appropriate set-off." (Docket # 45).  Thus, the only claims remaining are the Plaintiffs' claims against Illinois National for underinsured motorist coverage.

Now before the court is Illinois National's Motion for Summary Judgment. Illinois National contends that the commercial umbrella policy it issued to Gohmann during the relevant time period did not provide for underinsured motorist coverage, and thus, the Estates may not recover any proceeds under the policy.  The Plaintiffs contend otherwise.  The court, having read and reviewed the parties' briefs, the applicable law, and the designated evidence, now finds the Motion must be **GRANTED**.

**I.     Factual Background**

    **A.     The Accident of July 13, 2006**

1. On July 13, 2006, Hall and Terry were working as flaggers on a Gohmann road crew on Indiana State Road 66 in Richland, Indiana.  (Deposition of James Hall ("Hall Dep.") at 20-21; Deposition of Joseph Richardville ("Richardville Dep.") at 20-24).

2. Hall pulled up to the construction site in a F150 pickup truck owned by Gohmann after taking a break from her job.  (Richardville Dep. at 22-31).

3. Hall took two or three steps toward Terry in order to exchange equipment so that

she could take over the flagger post.  (*Id*. at 31-34).

4. As the two were exchanging equipment, a Dodge Dakota pickup truck driven by Donald Coffee ("Coffee") struck Hall and Terry.  (*Id*. at 31-36, 67, 76; Deposition of Joseph Vonderheide ("Vonderheide Dep.") at 31-32, 38-40, 61-62).

5. Hall and Terry both died as a result of the accident.  (Complaint ¶¶ 9, 11).

6. Coffee's vehicle was insured by Shelter Insurance with limits of $100,000 per person and $300,000 per occurrence. (*Id*. ¶ 22).

7. The limits of his insurance have been offered and paid.  (*Id.*).

8. Travelers issued a renewal Commercial Insurance Policy Number VTC2J-CAP-5793B72A-TIL-05 ("Travelers policy") to Gohmann for the period 12-31-05 to 12-31-06 containing business auto liability coverage.  (Declaration of Elizabeth Johnson ("Johnson Dec."), Travelers Commercial Insurance Policy, Ex. 2 at 1). The Travelers policy provides, in relevant part, as follows:

**Section II –   LIABILITY COVERAGE**

**A.     Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from ownership, maintenance or use of a covered "auto."

(*Id.*, Section II.A.).

9. The Travelers policy also provides for underinsured motorist coverage, with policy limits of $1,000,000.  (*Id*. at 12).

10. Travelers offered and paid the limits of its policy to the Estates. (Docket # 45).

    **C.**     **Relevant Illinois National Policy Language**

11. The Illinois National Commercial Umbrella Policy issued to Gohmann Asphalt under number BE 5190162 for the period of December 31, 2005, to December 31, 2006, provides, in pertinent part, as follows:

    **I.**     **INSURING AGREEMENT – COMMERCIAL UMBRELLA POLICY**

    A.     We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury . . . to which this insurance applies . . . .

(Johnson Dec., Illinois National Commercial Umbrella Policy, Ex. 1, Section I.A).

12. Hall and Terry are "insureds" under the policy as the policy covers Gohmann's "employees . . . while performing duties related to the conduct of [Gohmann's] business." (*Id.*, Section VII.M.7.b).

13. The policy contains an Exclusion O, which reads as follows:

    O.     **"No-Fault," "Uninsured Motorist," or "Underinsured Motorist" Laws**

This insurance does not apply to any obligation of the Insured under any "No-Fault," "Uninsured Motorist," or "Underinsured Motorist" law, or any similar law.

(*Id.*, Section V.O).

14. The main policy form[1] of the Illinois National policy does not provide for

---

[1] The phrase "main policy form" refers to the main body of the Illinois National policy, and not to the endorsements attached.

4

uninsured/underinsured motorist coverage.

15. The limits of insurance under the Illinois National policy are $25,000,000.00 per occurrence. (*Id*. at 1).

16. All other provisions relevant to the disposition of this case will be addressed in Section III. below.

17. Illinois National Commercial Umbrella Policy No. BE 5190162 is a renewal of Illinois National Commercial Umbrella Policy No. 2962468 (which was in effect from December 31, 2004, to December 31, 2005). (*Id*. at 1).

18. Illinois National Commercial Umbrella Policy No. 2962468 provided uninsured/underinsured motorist coverage.

19. To date, Illinois National has not paid underinsured motorist benefits to the Estates under Commercial Umbrella Policy No. BE 5190162.

## II. Summary Judgment Standard of Review

Summary judgment is appropriate where the pleadings, affidavits, and other materials on file demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Jurisdiction of this case is based upon diversity of citizenship, and, as all material events occurred in Indiana, the parties agree that Indiana substantive law applies. "Indiana courts have recognized that 'construction of an insurance policy is a question of law for which summary judgment is particularly appropriate.'" *Myles v. General Agents Ins. Co. of Am., Inc.*, 197 F.3d 866, 868 (7th Cir. 1999) (quoting *Piers v. American United Life*

5

*Ins. Co.*, 714 N.E.2d 1289, 1290 (Ind.Ct.App. 1999)).

The interpretation of an insurance policy is subject to the same rules of construction and interpretation as any other contract. *Amerisure, Inc. v. Wurster Constr. Co., Inc.*, 818 N.E.2d 998, 1001 (Ind.Ct.App. 2004); *Myles*, 197 F.3d 866 at 868 (applying Indiana law). Thus, the goal in interpreting an insurance policy is to ascertain and enforce the parties' intentions as expressed in the written contract, reading the "four corners" of the document as a whole. *Am. Family Ins. Co. v. Globe Am. Cas. Co.*, 774 N.E.2d 932, 935 (Ind.Ct.App. 2002). If the terms of an insurance policy are clear and unambiguous, its language must be given its plain and ordinary meaning. *Castillo v. Prudential Prop. and Cas. Ins. Co.*, 834 N.E.2d 204, 206 (Ind.Ct.App. 2005). If, however, reasonable persons would differ as to the meaning of the policy language, the policy language is ambiguous and must be viewed from the standpoint of an ordinary insured. *Id.*; *Burkett v. Am. Family Ins. Group*, 737 N.E.2d 447, 452 (Ind.Ct.App. 2000). An ambiguity in an insurance policy is strictly construed against the insurer, particularly where the policy language at issue involves an exclusion clause. *USA Life One Ins. Co. of Indiana v. Nuckolls*, 682 N.E.2d 534, 538 (Ind. 1997).

**III.   Discussion**

The issue in dispute is whether the Plaintiffs are entitled to underinsured motorist coverage on behalf of decedents, Hall and Terry, under Illinois National Commercial Umbrella Policy No. BE 5190162 (hereinafter the "Illinois National policy") issued to Gohmann in December 2005. The Plaintiffs advance a number of arguments in support

of their claims. These arguments are discussed, in turn, below.

    **A.    Endorsement No. 5**

The Illinois National policy contains two endorsements at issue in this case. The first is referred to as Endorsement No. 5, and reads, in pertinent part, as follows:

**Endorsement No. 5**

**Uninsured/Underinsured Motorists Coverage Endorsement**

**THIS ENDORSEMENT APPLIES TO A COVERED AUTO REGISTERED OR PRINCIPALLY GARAGED IN THE FOLLOWING STATE(S) (where indicated by an "X")[2]**

**The Declarations ITEM 3. LIMITS OF INSURANCE is amended to include the following additional provisions:**

**Applicable Uninsured/Underinsured Each Occurrence Limit(s)**

|  | | |
|---|---|---|
|  | **VERMONT** | **Bodily Injury and Property Damage Combined Single Limit** |

And, if Uninsured/Underinsured Motorist Coverage has been selected under this policy:

**Applicable Uninsured/Underinsured Each Occurrence Limit(s)**

|  | | |
|---|---|---|
|  | **FLORIDA** | **Bodily Injury** |
|  | **WEST VIRGINIA** | **Bodily Injury and Property Damage Combined Single Limit** |

And, if Uninsured/Underinsured Motorist Coverage has not been rejected under this policy:

**Applicable Uninsured/Underinsured Each Occurrence Limit(s)**

---

[2] No "X" marks are indicated on the Endorsement in the certified copy of the policy.

|  | **LOUISIANA** | **Bodily Injury Limit** |
|---|---|---|
|  | **NEW HAMPSHIRE** | **Bodily Injury Limit** |

(Johnson Dec., Illinois National Commercial Umbrella Policy, Ex. 1, Endorsement No. 5). The Insuring Agreement of Endorsement No. 5 provides:

**Section 1. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY** is amended to include the following additional provisions:

1. We will pay all sums in excess of the Uninsured/Underinsured Motorists Retained Limit the Insured is legally entitled to recover as compensatory damages from the owner or operator of:

   a. an Uninsured Motor Vehicle . . . because of Bodily Injury sustained by the Insured . . . .

(*Id.*).

There is no dispute that were it not for the geographic limitation quoted above – "THIS ENDORSEMENT APPLIES TO A COVERED AUTO REGISTERED OR PRINCIPALLY GARAGED IN THE FOLLOWING STATE(S) . . ." – this endorsement would provide coverage to the Estates on behalf of Hall and Terry. The issue, then, is the meaning of the geographic limitation in Endorsement No. 5 and whether it operates to exclude underinsured motorist coverage in autos principally garaged in Indiana.

The Plaintiffs first argue that the geographic limitation is a mere "heading," and that under the terms of the Illinois National Policy, the limitation "form[s] no part of the terms and conditions of coverage." (*See* Johnson Dec., Illinois National Commercial Umbrella Policy, Ex. 1, Section VI.H ("The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.")). The

8

policy does not define the term "heading." However, Indiana law does not require "that each and every term in an insurance policy be defined to avoid ambiguity." *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 223 (Ind.Ct.App. 1997). The term "heading" is a common English word and should be given its plain meaning. *See Caliber One Indem. Co. v. O&M Const. Co.*, 2004 U.S. Dist. Lexis 22817, at *12 (S.D. Ind. Sept. 28, 2004) (quoting *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 669 (Ind. 1997)) ("'Where the contract is plain and its meaning clear, the court will not change its evidence meaning, by rules of construction, and thereby make a new contract for the parties.'").

The American Heritage Dictionary, Second College Edition (1991), defines "heading" as a "title, subtitle, or topic that stands at the top or beginning, as of a text." Merriam-Webster Online Dictionary defines "heading" as "an inscription, headline, or title standing at the top or beginning (as of a letter or chapter)."

The dictionary definition of "title" is also pertinent, because the Estates state Endorsement No. 5 is "entitled Uninsured/Underinsured Motorists Coverage Endorsement." (Plaintiffs' Response at 14). "'Title' in Webster's is defined as . . . a general or descriptive heading." *Villa Enterp. Man. Ltd. v. Fed. Ins. Co.*, 360 N.J. Super. 166, 177 (Law Div. 2002).

Under these definitions, "Uninsured/Underinsured Motorist Coverage Endorsement" is the heading, not the text which follows. *See, e.g., Allstate Ins. Co. v. Richards*, 148 Misc.2d 759, 762 (N.Y. Sup. Ct. 1990) (describing coverage listed "under the heading 'Uninsured Motorist'" and noting "the policy has no . . . heading titled

'Underinsured Motorists'"); *see also Great W. Cas. Co. v. Gen. Fire & Cas. Co.*, 2008 U.S. Dist. Lexis 84519, at *44-45 (E.D. Cal. 2008) (under a heading "which is bolded, capitalized and highlighted between two lines," there is a description of coverage). Accordingly, the Plaintiffs effort to disregard the geographic limitation in Endorsement No. 5 by describing it as a "heading" contradicts the plain meaning of the term "heading."

The Plaintiffs next argue that the geographic limitation is grammatically ambiguous and must therefore be construed in favor of coverage. More specifically, the Plaintiffs argue the word "only" should have been inserted into the geographic limitation, as in "this Endorsement applies ONLY" to covered autos in the following states. (Plaintiffs' Response at 17) (emphasis in original). There is no need for the word "only," because it is superfluous in the context of a geographic limitation. *Cf. Ashe v. United Services Auto. Ass'n*, 532 N.W.2d 469 (Table), 1995 WL 94446, at *3 (Wis.App. March 9, 1995)(if the insurer's intent was to have an expanded territory apply, "there would be no need to include a geographic territory provision in the UM endorsement"). The word "only" would add nothing to the meaning of the plain limitation on coverage to the listed states marked with an "X."

The Plaintiffs also argue that Endorsement No. 5 is ambiguous because the geographic limitation is not stated underneath the language beginning with "INSURING AGREEMENT." The fact that Illinois National could have placed the geographic limitation under the "INSURING AGREEMENT" does not render the Endorsement ambiguous, and the Plaintiffs provide no support for the argument that it does. In short,

reading the terms of the Endorsement as a whole, the court finds the endorsement is not ambiguous and thus, does not provide coverage to the Plaintiffs.

Lastly, Plaintiffs argue that Endorsement No. 5 creates illusory coverage because there are no "Xs" in any of the boxes next to any listed states. As such, Plaintiffs argue the endorsement is against Indiana public policy. Illusory coverage has been defined by the Indiana Supreme Court as "that for which the insured paid a premium but from which he would not be paid benefits under any reasonably expected circumstances." *Jones v. State Farm Mut. Auto. Ins. Co.*, 635 N.E.2d 200, 2002 (Ind.Ct.App. 1994).

In support of Plaintiffs' argument, Plaintiffs cite *Western Reserve Mut. Cas. Co. v. Holland*, 666 N.E.2d 966, 968 (Ind.Ct.App. 1996). In that case, the Indiana Court of Appeals held that the insurer's policy provided illusory coverage because the terms of the policy provided coverage only if "(1) the tortfeasor had coverage; (2) the coverage was less than $25,000.00; and (3) the coverage was not less than $25,000.00." *Id*. Because the insured could recover underinsured motorist benefits under no reasonable set of circumstances, the Court held that the coverage was illusory. *Id*.

In the present case, Endorsement No. 5 provides UIM coverage to those listed states marked with an "X." None of the states listed – Vermont, Florida, West Virginia, Louisiana and New Hampshire – have an "X" next to them. Thus, a plain reading of the Endorsement provides that Endorsement No. 5 does not provide underinsured motorist coverage in any state. Moreover, there is no evidence in the record that the employer of Plaintiffs' decedents, Gohmann, or any other person claiming an interest in the contract,

paid any premiums for uninsured or underinsured motorist coverage. As a result, unlike the insured in *Holland*, Plaintiffs had no reasonable basis to expect underinsured motorist coverage under the Illinois National policy. Accordingly, the court finds, as a matter of law, that Endorsement No. 5 does not provide the Plaintiffs with underinsured motorist coverage under the Illinois National policy.

**B.     Endorsement No. 23**

The second endorsement at issue is Endorsement No. 23. That endorsement reads, in pertinent part, as follows:

### ENDORSEMENT NO. 23

### Automobile Liability Follow-Form Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

### Automobile Liability

This insurance does not apply to any liability arising out of the ownership, maintenance, operation, use or entrustment to others of any **Auto** owned or operated by or rented or loaned to any **Insured**. Use includes operation and loading or unloading of any **Auto**.

However, this exclusion will not apply if coverage is provided for **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, and exclusions of Scheduled Underlying Insurance, subject to the **Policy Period**.

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled**

**Underlying Insurance**, subject to the **Policy Period**.

(Johnson Dec., Ex. 1, Endorsement No. 23).

Plaintiffs point to the third paragraph of Endorsement No. 23 for the proposition that this endorsement provides underinsured motorist coverage, as it "provides coverage for 'such' Bodily Injury or Property Damage' covered by scheduled underlying insurance." (Plaintiffs' Response at 19). Reading this paragraph in isolation, they contend that coverage for bodily injury is not limited to coverage for "liability" for bodily injury, but instead provides coverage for the decedents' bodily injury – i.e., first-party coverage.

Plaintiffs misconstrue the meaning of the endorsement. The endorsement amends the Illinois National Policy to add an exclusion for "**Automobile Liability**" claims, then sets forth an exception to the exclusion if "coverage" – i.e., "**Automobile Liability**" coverage – is provided by scheduled underlying insurance. The follow-form endorsement goes on to state that coverage for "such" bodily injury claims will follow the terms of the underlying insurance.

The scheduled underlying policy of insurance issued by former defendant Travelers provides auto liability coverage, and thus, covers "such **Bodily Injury**" within the meaning of the Illinois National policy. For this reason, the "**Automobile Liability**" exclusion to the "**Automobile Liability Follow-Form Endorsement**" would not apply to preclude coverage for a third-party claim also covered under the Travelers policy. In this case, the Plaintiffs are not seeking third-party coverage – i.e., liability arising out of the

13

Dodge Dakota operated by Coffee – and thus, liability coverage is not at issue in this case.  *See Sanyo Laser Prods., Inc. v. Royal Ins. Co. of Am.*, 2003 U.S. Dist. Lexis 20129, at *9 n.2 (S.D. Ind. Nov. 7, 2003) ("[F]irst party" insurance is a contract between the insurer and the insured protecting the insured's own actual losses and expenses, while "third-party" insurance protects the insured from potential liability to a third party.").

Moreover, Endorsement No. 23 is made "subject to . . . all other terms, definitions, conditions and exclusions of this policy," referring to the Illinois National policy.  The policy provides only Commercial Umbrella Liability insurance protecting against losses arising from third-party claims in excess of underlying liability insurance only, as made clear by the "**SCHEDULE OF UNDERLYING INSURANCE**," which lists only liability coverage.

Thus, both the "**INSURING AGREEMENT**" of the Illinois National policy and the "**Automobile Liability Follow-Form Endorsement**" confirm the Illinois National policy provides third-party coverage only.  To argue, as Plaintiffs do, that the exception to the exclusion provided for in the third paragraph of Endorsement No. 23 operates to grant underinsured motorist coverage would be to ignore the "basic principle that exclusion clauses do not grant or enlarge coverage."  *Amerisure*, 818 N.E.2d at 1005 (citing *Indiana Ins. Co. v. DeZutti*, 408 N.E.2d 1275, 1278 (1980)).  Accordingly, the court finds that Endorsement No. 23 does not provide the Plaintiffs with underinsured motorist coverage under the Illinois National policy.

### C.     Exclusion O

The next issue in dispute is the applicability of Exclusion O. Exclusion O in the main policy form reads:

> O.   **"No-Fault," "Uninsured Motorist," or "Underinsured Motorist" Laws**
>
> This insurance does not apply to any obligation of the **Insured** under any "No-Fault," "Uninsured Motorist," or "Underinsured Motorist" law, or any similar law.

(Johnson Dec., Illinois National Commercial Umbrella Policy, Ex. 1, Section V.O). The exclusion was amended by Endorsement No. 5 to read:

> Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section V. EXCLUSIONS**, Exclusion O. is deleted in its entirety and replaced by the following:
>
> O.   **"No-Fault" Laws**
>
> This insurance does not apply to any obligation of the **Insured** under any "No-Fault" law.

(*Id.*). Plaintiffs argue that because Endorsement No. 5 provides underinsured motorist coverage, Exclusion O, as amended in Endorsement No. 5, does not preclude underinsured motorist coverage.

As discussed above, Endorsement No. 5 does not apply because Indiana is not a listed state with an "X" next to it in the definition of states where the endorsement applies. Thus, Exclusion O, as amended in Endorsement No. 5, does not "delete" Exclusion O in the main policy form for purposes of this case. Accordingly, Plaintiffs' argument with respect to the applicability of Exclusion O as amended does not save their

15

claims.

Plaintiffs also argue that Exclusion O in the main policy form does not exclude uninsured/underinsured motorist coverage, because "it does not cover an obligation of the insured under any uninsured motorist law." (Plaintiffs' Response at 20). Exclusion O only operates to exclude coverage in the event the insured has an obligation under any no-fault, uninsured motorist, or underinsured motorist statute. The issue in this case is whether the Plaintiffs have any right to underinsured motorist benefits under the Illinois National policy. As such, the court agrees with the Plaintiffs that the exclusion does not apply. However, the fact that Exclusion O does not apply to this case is not tantamount to a finding of coverage. An exclusion in an insurance policy is only effective if it operates as an exclusion to coverage. The "INSURING AGREEMENT" of the Illinois National Policy does not grant uninsured motorist coverage. As is evident from a plain reading of that clause, the Illinois National policy provides only for third-party commercial liability coverage. Plaintiffs' arguments to the contrary are rejected.

**D.     Indiana Code § 27-7-5-1.5**

In 1999, the Indiana Supreme Court held that Indiana's uninsured/underinsured motorist statute applied to all umbrella policies which provided third-party auto liability coverage. Ind. Code § 27-7-5-2; *United Nat. Ins. Co. v. DePrizio*, 705 N.E.2d 455 (Ind. 1999). In 2005, the Indiana legislature amended the statute as follows:

**27-7-5-1.5 Commercial Vehicle policy**

(b)     This chapter does not require an insurer to make available uninsured

>     motorist or underinsured motorist coverage described in section 2
>     [IC 27-7-5-2] of this chapter in connection with the issuance of a:
>     . . .
>     (2)     commercial umbrella or excess liability policy.

Ind. Code § 27-7-5-1.5. The issue in dispute is whether Indiana's amended version of the uninsured/underinsured motorist statute applies such that Illinois National was not required to make available underinsured motorist insurance in connection with this policy.

Plaintiffs argue that the amended statute applies only to the issuance of "new" policies and not, as in this case, to the issuance of "renewal" policies. The plain language of the statute does not limit its application to newly issued policies. Rather, it applies to the "issuance" of any policy, whether entirely new or a renewal following a previous policy.

The plain meaning of the statute must be read in light of Indiana Code § 27-7-6-3, which defines a renewal policy as the "issuance" of a replacement policy. *See Little v. Progressive Ins.*, 783 N.E.2d 307, 314 (Ind.Ct.App. 2003) (citing *Inman v. Farm Bureau Ins.*, 584 N.E.2d 567, 569 (Ind.Ct.App. 1992)).

Further, Indiana Code § 27-7-5-1.5 must be read in light of the mandatory IUM statute, Indiana Code § 27-7-5-2. That statutory section begins by defining its application to every auto liability policy delivered or issued for delivery in Indiana. Ind. Code § 27-7-5-2(a). The section goes on to make clear that this universe of policies that are "issued" in Indiana includes both "first renewal of existing policies" after the effective date, as

well as "newly issued" policies.  *See* Ind. Code § 27-7-5-2(a)(2) ("Insurers must make underinsured motorist coverage available to all existing policyholders on the date of the first renewal of existing policies . . . and on any policies newly issued . . . .").

The legislative intent must be presumed to be the same with respect to Indiana Code § 27-7-5-1.5, *Inman, supra.*, especially because the word "issuance" in the statute is just another form of the word "issued" in Indiana Code § 27-7-5-2.  "Webster's Third New International Dictionary defines 'issuance' as the noun form of 'issue.'"  *Mining Energy, Inc. v. Dir. OWCP*, 391 F.3d 571, 575 (4th Cir. 2004); *see also In re Auto. Prof'ls, Inc.*, 370 B.R. 161, 171 (Bankr. N.D. Ill. 2007) ("'Issued,' as used in reference to the issuance of an insurance policy, means when the policy is made and delivered, and is in full effect and operation.").

Thus, the meaning of policies that are "issued" in Indiana Code § 27-7-5-2, i.e., both "first issued" policies and "renewals," applies equally to Indiana Code § 27-7-5-1.5, which refers to the "issuance" of policies.  Accordingly, the court finds that Illinois National was not required to provide underinsured motorist coverage in its renewal policy issued to Gohmann after the amended statute took effect.

**IV.    Conclusion**

The court finds that Illinois National Commercial Umbrella Policy BE 5190162 did not provide underinsured motorist coverage and that therefore, the Plaintiffs are not

entitled to coverage.  Accordingly, Illinois National's Motion for Summary Judgment

(Docket # 65) is **GRANTED**.


**SO ORDERED** this 27th  day of April 2009.

$\phantom{xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx}$_____
$\phantom{xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx}$RICHARD L. YOUNG, JUDGE
$\phantom{xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx}$United States District Court
$\phantom{xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx}$Southern District of Indiana

Electronic Copies to:

Gerald F. Allega
STATHAM ALLEGA JESSEN & RUDISILL
saj@evansville.net

Trevor J. Crossen
WAGNER REESE & CROSSEN, LLP
tcrossen@injuryattorneys.com

Patrick  Fredette
MCCORMICK BARSTOW LLP
patrick.fredette@mccormickbarstow.com

Timothy  Puin
MCCORMICK BARSTOW LLP
tim.puin@mccormickbarstow.com